UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |  |
| --- | --- | --- |
| SUSAN BARNETTE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 10-77-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GRIZZLY PROCESSING, LLC, et al., | ) | **& ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Imagine walking outside every morning and finding a layer of black, soot-like dust on your home, car, and yard. You wipe it away, but it returns. Your children return from outside with black streaks on their clothes. You can no longer use your swimming pool because of the dust. Close to your home is a coal processing plant. You realize that your dust problems began around the time the Plant began operating and believe the two to be connected. The Plaintiffs in this action allege they face this situation daily. They claim that coal dust from the Defendants' coal processing plant has interfered with their lives and damaged their properties. The Defendants now move for summary judgment against the Plaintiffs on a number of grounds. For the following reasons, those claims are granted in part and denied in part.

## I. BACKGROUND

The Plaintiffs in this action all have one thing in common: they live near a coal screening plant in Banner, Kentucky (the "Banner Plant"). The Defendant, Grizzly Processing, Inc., operated the plant from April 2007 to April 2008. R. 17

at 7. Thereafter, the Defendant Frasure Creek Mining, LLC, assumed operations and continues to do so. Starting in 2006, the Plaintiffs claim that coal dust and noise from the Plant began to interfere with their ability to use and enjoy their residences. *Id*. Black, soot-like stains appeared on buildings and roofs, R. 147-4 at 3, R. 102-2 at 71, flowers in gardens failed to grow, *id.* at 17, and children could not play outside as they once did, all because of the coal dust, R. 103-2 at 7. One Plaintiff testified that, after mowing his lawn, he resembled an underground miner because of the coal dust in the air. *Id.* Another explained how she uses a pressure washer to clean the black dust off of her home. R. 114-2 at 29–30. Their accounts, while all unique, explain how the dust has impacted their homes and lives.

The Plaintiffs originally filed suit against Frasure Creek and Grizzly on May 21, 2010, in Floyd Circuit Court. R. 1-2. The Plaintiffs alleged claims sounding in trespass, nuisance, and assault and battery. Frasure Creek and Grizzly then removed the action to federal court on June 15, 2010. R. 1.

This suit is not the first one filed against Frasure Creek and Grizzly by residents living near the Banner Plant. In 2007, another set of plaintiffs sued both Defendants. *Crisp v. Grizzly Processing, LLC, & Frasure Creek Mining, LLC*, Floyd Circuit Court, Division I, Civil Action No. 07-CI-1384 ("*Crisp*"). The *Crisp* plaintiffs eventually settled with the Defendants on August 19, 2010. R. 63-6.

The Barnette Plaintiffs' claims are now before the Court.

## II. DISCUSSION

*A. Service of Process*. Among the procedural problems that have plagued this action since its filing, improper service has been the most salient. Federal Rule of

Civil Procedure 4(m) gives a plaintiff 120 days to accomplish service following the filing of the complaint. If a defendant is not served within 120 days, Rule 4(m) requires that the Court dismiss the action without prejudice or order that service be made within a specified time. Fed. R. Civ. P. 4(m). The Plaintiffs in this matter filed their complaint on May 21, 2010. They finally served the Defendants on June 27, 2011—over a year later. R. 142; R. 143. The Plaintiffs knew of this deficiency: both Frasure Creek and Grizzly listed the failure to effect proper service as an affirmative defense in their answers to the Plaintiffs' amended complaint. R. 20 at 6; R. 40 at 5. Even so, dismissal is not warranted as the Defendants claim.

First and foremost, dismissal is inappropriate because service has finally occurred. Had the Defendants raised this issue in a motion to dismiss soon after removing the action to federal court, dismissal would have been appropriate. *Cf. Morris & Co. v. Skandinavia Ins. Co*., 279 U.S. 405, 409 (1929) (explaining that a defendant does not waive objections to service of process by removing an action from state to federal court); *Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 250 F. 160, 165 (6th Cir. 1918). Yet they never filed such a motion.

Second, the parties have devoted significant time and resources to this matter, and dismissing the action without prejudice at this time would serve no purpose, especially in light of the Plaintiffs' decision to finally effect service. And, neither party would be prejudiced by permitting this action to continue—in fact, just the opposite is true. As a result, the Defendants' motions to dismiss are denied.

**B. Failure to Disclose Expert Report.** Frasure Creek and Grizzly also have filed a motion to exclude the testimony of one of the Plaintiffs' experts, Jack Spadaro.

R. 121. Spadaro previously held the position of Superintendent of the National Mine Health and Safety Academy. According to the Scheduling Order entered on August 23, 2010, the Plaintiffs had until April 15, 2011, to disclose their experts and expert reports under Rule 26(a)(2). R. 13. While the Plaintiffs listed Spadaro as a possible expert witness in their initial disclosures, they failed to ever provide the required expert report. The Plaintiffs did, however, file three other expert reports from real estate appraisers on April 15, indicating their awareness of the deadline and requirements for such disclosures.

Under Rule 37(c), a party who fails to provide information or identify a witness as required by Rule 26(a) is prohibited from using that witness at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Plaintiffs claim that their failure to disclose the report was harmless because the Defendants already had all of the information they needed about Spadaro. The Plaintiffs previously retained Spadaro as an expert in the *Crisp* litigation. As part of his participation in that suit, he inspected the Banner Plant on October 27, 2009, and shared his opinions in a report prepared by the *Crisp* plaintiffs for Frasure Creek and Grizzly. R. 146-1 at 2. The two Defendants then deposed Spadaro on November 4, 2009. R. 146-3. After that case settled, the Barnette Plaintiffs filed this action, once again identifying Spadaro in their initial disclosures. However, neither Grizzly nor Frasure Creek deposed Spadaro during the course of this litigation. And to date, the Plaintiffs have not filed an expert report that strictly complies with Rule 26(a)(2).

According to the advisory committee's notes to Rule 37(c), the failure to comply with discovery will be considered "harmless" when it involves "an honest

mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *See Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). Although the Plaintiffs' excuse for failing to comply with the federal rules on expert disclosures borders on negligence as opposed to an honest mistake, *see Hall v. Furest*, No. 02-70625, 2006 WL 2375677, at *3 (E.D. Mich. Aug. 16, 2006), evidence suggests that the Defendants nevertheless knew of Spadaro and the contents of any testimony he would give. The Plaintiffs' initial disclosures stated that Spadaro's testimony would be similar to that disclosed in *Crisp*, and nothing indicates that the Plaintiffs sought to surprise Frasure Creek or Grizzly at trial. Also, the Plaintiffs mention that their attorney received a "verbal inquiry" from the Defendants about Spadaro one month before the disclosure deadline. R. 146-1 at 5.

The exclusion of expert testimony is a harsh sanction. Still, "[d]istrict courts have broad discretion to exclude untimely disclosures of expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). But this sanction is not warranted here. Nothing about the Plaintiffs' failure suggests an attempt to "hide the ball" to gain a tactical advantage. Further, the Defendants appear to have had sufficient knowledge of Spadaro and his expected testimony. Thus, the Plaintiffs' failure was harmless. The Court denies the Defendants' motion, but will restrict Spadaro's testimony to only that information contained in the report attached to the Plaintiffs' response at R. 146-2. Also, the Defendants shall have thirty days from the date of this Order to depose Spadaro. The Plaintiffs shall ensure his availability.

**C. *Motion for Summary Judgment Against All Plaintiffs*.** Frasure Creek and Grizzly have filed motions for summary judgment against the Plaintiffs collectively

and against individual Plaintiffs. R. 123; R. 124. The collective motion for summary judgment is based on the following: (1) the Plaintiffs' inability to establish causation for trespass and nuisance, (2) the Plaintiffs' failure to provide evidence of *both* cost to repair and diminution in market value for damage to their property, (3) the absence of evidence supporting Plaintiffs' nuisance claims based on noise disturbances, (4) the admissions of certain Plaintiffs that they have not suffered personal injuries, (5) in the cases where Plaintiffs have alleged personal injuries, their failure to produce expert reports or evidence supporting their claims, and (6) the failure to produce evidence of lost rental income. *Id.*

*1. Causation.* The Plaintiffs maintain that Frasure Creek and Grizzly should be held liable for trespass and nuisance. Claims for trespass and nuisance both require that the Plaintiffs establish causation, i.e., that the Defendants caused the harm. *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 865 (W.D. Ky. 2009). Viewing the evidence in the light most favorable to the non-moving party, the Plaintiffs survive summary judgment on the issue of causation.

Frasure Creek and Grizzly raise causation as an issue because the Plaintiffs failed to offer expert evidence linking the dust particles on the Plaintiffs' respective properties to the Defendants' plant. Some courts in similar cases have required that plaintiffs produce expert testimony to show causation. *Radcliff v. Tate & Lyle Sucralose, Inc.*, No. 06-0345, 2008 WL 5114302, *4–5 (S.D. Ala. Dec. 4, 2008); *Barren v. Atlantic Richfield Co.*, 95 F.3d 375, 383 (5th Cir. 1996). In fact, some cases based on Kentucky law have focused on expert testimony in establishing causation. *See Dickens*, 631 F. Supp. 2d at 865 ("No expert has even attempted to identify the

source of the white fallout nor do they identify the contents of the white fallout. Without evidence of the contents of the alleged dust, Plaintiffs cannot show that any particulate matter has entered their property."); *Brockman v. Barton Brands, Ltd*., No. 3:06-332, 2009 WL 4252914, at *1 (W.D. Ky. Nov. 25, 2009); *Wilhite v. Rockwell Intern. Corp.*, 83 S.W.3d 516, 520 (Ky. 2002) (explaining the need for scientific evidence to show that PCB contamination increases the risk of cancer in humans and may harm animals and crops). What is missing from these cases is any definitive statement that Kentucky law *requires* an expert to establish causation. And Kentucky courts have been clear when plaintiffs must present expert testimony to survive summary judgment. *See, e.g.*, *Underwood v. Kousa*, 2011 WL 2416858, at *2 (Ky. Ct. App. Jun. 17, 2011) ("Liability for medical negligence generally requires expert medical testimony to establish the applicable standard of care, its breach, and consequent causation of injury. . . . Further, a plaintiff's failure to provide medical proof is generally fatal to the cause of action, and such a case is appropriate for summary disposition . . . .") (citing *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006).

Although the Plaintiffs lack expert testimony, they nevertheless provide other evidence supporting their argument that coal dust particles from the Banner Plant entered their property. First, the Plaintiffs point out that the Kentucky Energy and Environment Cabinet cited Frasure Creek at least twice in 2007 for non-compliance with applicable air quality regulations. R. 147-1 at 3 n.9. Next, the Plaintiffs indicate that, until mid-2009, Frasure Creek operated the Banner Plant without enclosing the crusher unit and without a foam-spray system to suppress dust. *Id.* at 3. A worker

from the Plant, Lloyd Lane, testified that Frasure Creek's efforts to suppress the dust were sporadic. R. 112-3 at 27. Also, the Plaintiffs' expert Jack Spadaro observed fugitive dust leading to the "preparation plant." R. 147-3 at 4. He admitted, however, that he did not see any dust from the coal loading facilities on the day he visited the Plant. And Spadaro conceded that the Plant was in compliance with the federal regulations and industry standards on that day. *Id.* Finally, the Plaintiffs state that, in addition to their personal observations, they will produce photographs depicting dust and discoloration near, on, and in their homes. R. 147-1 at 3.

Without contesting the Plaintiffs' evidence, Frasure Creek and Grizzly suggest five alternative sources of the dust. First, they note that the east side of the city of Allen (located near the Banner Plant) is split by Route 23. According to Jack Whitley, superintendent of the Banner Plant, Route 23 is one of the most heavily-traversed roads for coal trucks and coal processing facilities in the area. R. 123-2 at 2. Second, Whitley states that another coal processing facility is located approximately five miles south of Allen. *Id.* Third, a concrete processing facility is situated at the center of Allen. *Id.* Fourth, a deep mine facility owned by another coal company operates in the Allen area and uses coal trucks to move the coal from its mine facility through Allen. *Id.* Finally, railroad tracks run through Allen, and trains use these tracks to transport coal from numerous coal companies in the southeast to other locations. *Id.* At first glance, such evidence would appear to doom the Plaintiffs' prospects for establishing causation. But on second glance, it is what is missing from this evidence that matters: the Defendants have not shown that any of these sources actually emitted dust particles that could have invaded the Plaintiffs'

properties.  Do coal trucks passing through a neighborhood emit dust in sufficient amounts to coat a person's car and house?  Did the cement factory even emit black particles?  The Court does not know and will not speculate.

What is known is that most of the Plaintiffs live within a quarter-mile or less of the Banner Plant, significantly reducing the likelihood that the coal dust traveled from the plant five miles away.  R. 147-1 at 5.  Also, evidence in the record shows that the Banner Plant violated state air quality regulations at least twice and that the Defendants operated the Plant without enclosing the crusher unit and without a foam-spray system to suppress dust.   And without endorsing the Plaintiffs' reliance on the "common knowledge" rule under Kentucky law, it is not a stretch to say that many residents of Eastern Kentucky, having grown up in and around coal mining, are familiar with coal dust.  If two coal plants were within the immediate vicinity of the Plaintiffs' homes, the result might be different.  *Brockman*, 2009 WL 4252914, at *1 n.2 ("[T]he close proximity of the many factories in Louisville's Rubbertown neighborhood further complicated the causation issues in many of the Court's previous related opinions.").  This makes sense.  After all, an average resident would likely not possess the scientific acumen to identify and distinguish dust coming from two closely-situated sources.   But in this case, the other coal plant Defendants suggested as an alternate dust source is five miles away from the Banner Plant, and many of the Plaintiffs live within a quarter of a mile of the Banner Plant.  R. 147-1 at 5.  It does not take an expert to conclude that the Plant beside the Plaintiffs' homes that has been found to be in violation of state regulations and where dust has been

observed has a significantly greater chance of being responsible for the dust than the plant miles away.

This conclusion does not mean lay testimony that is unaccompanied by expert opinion will be appropriate in every situation. The court in *Dickens v. Oxy Vinyls, LP*, rejected efforts by a group of plaintiffs attempting to make their case through lay testimony. 631 F. Supp. 2d at 865-66. In that case, two former workers claimed to be familiar with the odors allegedly emanating from a nearby chemical manufacturing plant. Neither worker qualified as a smell expert such that he could identify the cause of the odor. *Id*. at 866. As a result, such evidence could not establish that the defendant's emissions caused the odors. Does this mean there is a difference between smelling an order and seeing a particle? Perhaps. *Brockman*, 2009 WL 4252914, at *1 n.2 ("The Court's analysis here is somewhat different from *Dickens v. OxyVinyls*, 631 F.Supp.2d 859 (W.D. Ky. 2009), and *Bell v. DuPont*, 640 F. Supp. 2d 890 (W.D. Ky. 2009), because of the presence of actual particles, and not just odors, on Plaintiffs' properties."). Although linking the dust on their properties to the Plant requires drawing an inference, that leap is not so great as to defeat their claims on summary judgment. Indeed, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment[,] . . . the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While a mere "scintilla of evidence in support of the plaintiff's position will be insufficient," *id*., the Plaintiffs in this action have presented more than a mere scintilla of evidence.

With this in mind, a more difficult issue may arise at trial on the question of damages. The Plaintiffs acknowledge that multiple sources could have contributed to the dust, but insist such evidence only means a jury would have to apportion damages. Such a task could prove difficult in the absence of expert testimony. Nevertheless, the possibility of apportionment does not relieve the Defendants of liability. *Southeast Coal Co. v. Combs,* 760 S.W.2d 83, 84 (Ky. 1988) ("One who contributes to a nuisance is responsible in damages and/or diminution of market value only to the extent of his contribution, but the fact that others participate in creating the nuisance does not exonerate the contributor completely."). It is simply an issue for another day.

  *2. **Damages**.* Diminution in value versus cost to repair: must the Plaintiffs present evidence of both types of damages? Here, the Plaintiffs have only offered evidence of diminution in value damages. Frasure Creek and Grizzly cry foul. Under their reading, Kentucky law mandates that a party submit both. This is not the case.

  The measure for damages depends on whether the injury to the property was permanent or temporary. If permanent, the measure of damages is the amount by which the fair market value of the property decreased immediately prior to and after the trespass; if temporary, the measure of damages is the cost to return the property to its original state. *Ellison v. R & B Contracting, Inc.,* 32 S.W.3d 66, 69 (Ky. 2000). Injuries are permanent when the "cost to restore the property to substantially its original state exceeds the amount by which the injury decreased the property's value." *Id.* at 70 (internal citation omitted). When the cost to restore the property to its

original state costs less than the decrease in value, the injury will be considered temporary and a party may only receive cost to repair damages.

Kentucky law is clear that when a property owner suffers a complete loss, that party need only introduce diminution in value damages. In *Carter v. Coalfield Lumber Co., Inc.*, 331 S.W.3d 271, 276–77 (Ky. Ct. App. 2010), the court considered two separate properties. In one case, evidence showed that the property had been completely destroyed, and in the other, the evidence proved only that the damage had been temporary. Because the property owners suffering temporary damage failed to provide proof of cost to repair damages, the trial court correctly granted a judgment notwithstanding the verdict. *Id.* at 276. On the other hand, the property owner who suffered a complete loss need not have introduced cost to repair damages. *Id.* at 277.

A property owner may also introduce only diminution in value damages when that party shows that repair is not possible. *Mountain Water Dist. v. Smith*, 314 S.W.3d 312, 315 (Ky. Ct. App. 2010) ("This court does not read *Ellison* to require a claimant to present evidence of diminution in value and cost of repair when a claimant puts on evidence demonstrating they were unable to repair the damage and do not seek cost of repair damages."). In *Mountain Water Dist. v. Smith*, the property owners presented evidence that repairing their property from as sewage leak was not feasible. *Id.* Repair would need to be done on neighboring property which the plaintiffs did not own. The plaintiffs therefore sustained their burden of proof by providing diminution in value damages alone.

Here, the Plaintiffs do not claim they suffered a complete loss. In fact, their own expert appraiser only puts the diminution in value at 23% on average—a number

indicating that their properties still retain value. R. 150 at 5. They instead liken their claims to those in *Smith*, maintaining that repair is not possible and seeking only diminution in value damages. R. 147-1 at 9–10. They describe the injuries to their properties as "relatively constant" with no clear end in sight. *Id.* at 10. In their view, removing accumulated dust on one day only means the same process must be repeated the next day. Under these circumstances, "repair" would be meaningless.[1]

Frasure Creek and Grizzly believe the injuries fall more in line with those of the plaintiffs suffering temporary injuries in *Carter v. Coalfield Lumber Co*. The plaintiffs in that case, the Sweeneys, sought property damages following the defendant's construction activities near their home. The Sweeneys testified that rocks fell onto their property which ruined their pool and caused drainage problems to an outbuilding. 331 S.W.3d at 273-74. The court held that both types of damages should have been provided. And that makes sense. Once Coalfield paid for the pool and building damage, the property would be restored to its original condition, meaning restoration was possible. But in *Smith* and in this case, the damage will allegedly continue to occur. For *Smith*, the damage would continue until the neighboring property owners repair the sewage leak. Here, the damage will last until Frasure Creek takes steps to rectify the dust problems or ceases operating. For this reason, the Plaintiffs' claims for damages are not defeated by their failure to introduce cost to repair damages.

---

[1] The Plaintiffs do not seek injunctive relief in this matter. The Defendants, however, do not challenge them on their failure to do so. The Court is unaware of case law mandating that a plaintiff seek injunctive relief in order to prevail in a situation such as this one, nor has either Defendant pointed to any cases.

One more point. The Plaintiffs make clear that they are alleging an intentional trespass. R. 147-1 at 6. In Kentucky, even when evidence is "vague" as to the amount of damage, but a trespass nevertheless has been committed upon another's property, that party is entitled to at least nominal damages. *Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 55 (Ky. 2007). They are correct. Even if diminution in value damages were precluded, the Plaintiffs would still be entitled to nominal damages.

*3. Noise Complaints.* Frasure Creek and Grizzly next move for summary judgment on the Plaintiffs' nuisance claims based on noise from the Banner Plant. The Plaintiffs' complaint states that the "continuous dust, noise and contamination" from the Banner Plant "has substantially interfered with their ability to enjoy and use their residence thus constituting a trespass and nuisance." R. 17 at 7. Kentucky law generally treats noise complaints as nuisance claims. *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 865 (W.D. Ky. 2009) (citing *J.R. Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134 (Ky. 1961)). Many Plaintiffs, however, testified that they are not making noise-related claims. In fact, thirty-three Plaintiffs say as much in their depositions. R. 123-1 at 10–11. In response, the Plaintiffs claim that there are no stand-alone noise claims to dismiss. Frasure Creek and Grizzly beg to differ.

Whether the noise claims are viewed as evidence of nuisance or as stand-alone nuisance claims, those Plaintiffs who conceded that they were not complaining about noise are precluded from doing so at trial. Frasure Creek and Grizzly's motion for summary judgment on this point is granted. In addition, since the Plaintiffs admit that they are not making stand-alone noise claims, no such claims will be presented to the

jury. Rather, the Plaintiffs that claim noise may simply present it as evidence of the nuisance.

**4. *Assault and Battery Claims*.** Frasure Creek and Grizzly next move for summary judgment against the Plaintiffs on their claims alleging assault and battery. Specifically, the Plaintiffs' amended complaint states that "[t]he Plaintiffs also allege that the Defendants have committed assault and battery by continuously causing coal dust to come in physical contact with many of the Plaintiffs through the inhalation of coal particles." R. 17, ¶ 51. Frasure Creek and Grizzly liken the claims for assault and battery to personal injury claims under Kentucky law. R. 123-1 at 11 (citing *Resthaven Mem'l Cemetery, Inc. v. Volk*, 150 S.W.2d 908, 911 (Ky. Ct. App. 1941) ("[A]n action for an injury to the person of the plaintiff, refers to those cases where the personal injury is the gist of the action, such as assault and battery[.]") (citation omitted)). And as personal injury claims, the Plaintiffs must show some actual injury. Yet fifty of the Plaintiffs testified that they were not seeking damages for personal injury. *See, e.g.*, R. 114-2 at 38–39. Even so, the Defendants' interpretation of a battery claim is too narrow under Kentucky law.

The Plaintiffs base their assault and battery claims on their inhalation of the coal dust emitted by Frasure Creek and Grizzly. Unfortunately, neither party discusses the threshold matter: whether a party can state a viable claim for battery based on particulate touching under Kentucky law. In Kentucky, common law civil battery is defined "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Vitale v. Henchey*, 24

S.W.3d 651, 657 (Ky. 2000) (quoting *Sigler v. Ralph*, 417 S.W.2d 239, 241 (1967)).

But does particulate touching qualify as "touching" for purposes of battery?

The court in *Powell v. Tosh*, No. 5:09-cv-121, 2011 WL 1674957, at *1 (W.D. Ky. May 3, 2011), addressed a similar situation where the plaintiffs alleged battery based on the touching of their persons by particulates originating from a hog barn. The court recognized that Kentucky law has not yet addressed whether particulate touching can result in a battery. It then analogized to a Kentucky case where the bombardment by x-rays supported the physical contact requirement for a mental anguish claim. *Id.* (citing *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980)). It also took note of other courts that have allowed battery claims to proceed under similar situations, such as *Leichtman v. WLW Jacor Commc'ns, Inc.*, 634 N.E.2d 697 (Ohio Ct. App. 1994), and ultimately concluded that the plaintiffs' allegations were sufficient to permit filing a second amended complaint.

Other courts have gone the other way. At least under West Virginia law, the Fourth Circuit declined to expand the tort of battery to include "any chemical exposure that results in potentially dangerous, detectable levels of that chemical in a person's body." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 95 (4th Cir. 2011). The court concluded that an "actual physical impairment" was required to state a battery claim under West Virginia law. *Id.* (citing *Funeral Servs. by Gregory, Inc. v. Bluefield Comm. Hosp.*, 413 S.E.2d 79, 82 (W.Va. 1991) (mere exposure accompanied by fear of contracting disease is not battery), *overruled on other grounds by Courtney v. Courtney*, 437 S.E.2d 436 (1993)). It refused to embrace the plaintiff's definition of battery based on "offensive contact."

Here, the Defendants simply do not contest whether a party could state a viable claim for battery based on particulate touching under Kentucky law. Frasure Creek and Grizzly base their entire challenge to the assault and battery claims on either the failure to allege personal injuries by some Plaintiffs or the failure to medically support those injuries by the remaining Plaintiffs. But in Kentucky, "[b]ecause a battery, like most intentional torts, is an offense against the dignity of the plaintiff, neither physical injury nor actual damage must be proved by the plaintiff." 13 Ky. Prac. Tort Law § 2:1 (2010). Indeed, even in cases where physical injury and actual damages cannot be shown, nominal damages may be awarded. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). Thus, the Plaintiffs' failure to allege personal injuries does not defeat their battery claims.

Frasure Creek and Grizzly also fail to make any argument about a critical link in establishing battery: intent. Intent is an essential element of a battery claim. *Vitale*, 24 S.W.3d at 657. Did the Defendants intend to touch the Plaintiffs? *Id.* at 657–58. That question is left unasked. Further, the Defendants do not address the Plaintiffs' claims for assault. Because the Defendants have not moved for summary judgment on these grounds, the Court will not construct arguments on their behalf. *See United States v. Zannino*, 895 F.2d 1, 7 (1st Cir. 1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). The assault and battery claims survive.

Seven Plaintiffs, however, do allege personal injuries. R. 123-1 at 13. One Plaintiff describes how his allergies worsened because of the coal dust. R. 123-8 at 5.

Another explained that both she and her children experienced allergy problems from the dust. R. 128-3 at 22–23. Yet the Plaintiffs offer no medical evidence to support their claims. Such evidence is necessary to survive the Defendants' motions for summary judgment. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1200 (6th Cir. 1988) (plaintiffs seeking damages for their bodily injuries must prove to a "reasonable medical certainty" that the contaminant caused their particular injuries); *Potter v. EnerSys, Inc.*, No. 5:08-467, 2009 WL 3764031, at *4 (E.D. Ky. Nov. 9, 2009); *Adams v. Cooper Indus., Inc.*, No. 03-476, 2008 WL 339714, at *3 (E.D. Ky. Feb. 5, 2008) (citation omitted). The Plaintiffs offer nothing other than their deposition testimony in support of these claims. As a result, Frasure Creek and Grizzly are entitled to summary judgment on the personal injury claims.

**D.  Individual Motions for Summary Judgment.**  Frasure Creek and Grizzly have also filed motions for summary judgment against many of the Plaintiffs on an individual basis. Rather than address the motions separately, the Court will consider the motions according to the issues raised.

**1.  *Trespass, Personal Property, and the Statute of Limitations*.**  A number of the Plaintiffs own mobile homes. R. 90-1 at 2, 91-1 at 2, 92-1 at 2, 93-1 at 2, 94-1 at 2. These homes sit upon land owned by individuals not involved in this suit. And under Kentucky law, mobile homes are treated as personal property. Grizzly points out that Kentucky law also mandates that claims for trespass to personal property be brought within two years of the accrual of the action. R. 90-1 at 4. Grizzly last operated the Plant in April 2008 and the current suit was not filed until May 2010.

Because the claims accrued more than two years ago, Grizzly argues the applicable statute of limitations bars their claims. It is correct.

Before delving into the limitations question, the first consideration is whether a mobile home should be considered "personal" or "real" property because this affects which statute of limitations applies. Under Ky. Rev. Stat. Ann. § 186A.297(1), a manufactured home remains personal property until the owner files an affidavit of conversion to real estate with the county clerk's office attesting that the home has been or will be permanently affixed to the real estate. The owner must also surrender the Kentucky certificate of title. Only after taking these steps will the manufactured home lose its status as personal property and become an improvement to the real estate on which it sits. *Citizens Nat. Bank of Jessamine Cnty. v. Washington Mut. Bank*, 309 S.W.3d 792, 796 (Ky. Ct. App. 2010); *In re Ritchie*, 416 B.R. 638, 643 (B.A.P. 6th Cir. 2009); *PHH Mortg. Servs. v. Higgason*, 345 B.R. 584, 586–87 (Bankr. E.D. Ky. 2006). As an example, the Plaintiffs Garnett and Herbert Laferty's mobile home sits on property they lease from an individual not involved in this suit. They moved the mobile home onto the land in 2003 but have not complied with the procedure in § 186A.297(1). R. 90-4 at 2. Under the statute, their mobile home remains personal property.

This statute produces an unfortunate paradox for the mobile home owners. If they comply with the process in § 186A.297, their mobile homes will become an accession to the real estate and the owners will be forced to relinquish their ownership interests in their homes. *Tarter v. Turpin*, 291 S.W.2d 547, 549 (Ky. 1956). If they do not comply, their homes will remain personal property. The Plaintiffs claim that

Kentucky law cannot mean what it says: a mobile home cannot be "personal property" for all purposes. R. 139-1 at 2. Such a reading would be illogical. After all, the Floyd County Sheriff's Office county tax rolls characterize the property as "real estate." R. 139-1 at 3. The Plaintiffs, however, neglect to explain why the statutory classification for this type of property should be overridden by local tax classifications. They instead propose that the mobile homes' status as personal property is a question of fact and the real question is whether the mobile home is permanently affixed to the land. *Id.* They base this argument on *Whisman v. Whisman*, No. 2007-2534, 2009 WL 2971552, at *2–3 (Ky. Ct. App. Sept. 18, 2009), a case involving a Kentucky divorce proceeding. But *Whisman* only stands for the proposition that an "affixed manufactured home without a title may be conveyed by deed." *In re Starks*, No. 10-22108, 2011 WL 248521, at *4 (Bankr. E.D. Ky. Jan. 24, 2011). In fact, the *Whisman* court expressly concluded insufficient evidence existed to even determine whether § 186A.297 applied. *Whisman*, 2009 WL 2971552, at *3. Here, it is undisputed that the mobile home owners have not complied with § 186A.297 and the homes remain personal property. *In re Starks*, 2011 WL 248521, at *4 ("The mobile home at issue herein, having an active certificate of title and not having been converted to real property in accordance with KRS 186A.297, is unencumbered personal property . . . .").

Turning to the statute of limitations issue, Kentucky law includes three limitations periods for claims involving personal property. *See* Ky. L. of Damages § 12:15 (2011). In this case, only two are at issue. Kentucky Revised Statutes § 413.120(4) explicitly recognizes "an action for trespass on real or personal

property" as one that must be brought within five years of accrual. The later-enacted statute, § 413.125, requires that actions for injuring personal property must be commenced within two years from the time the action accrued.

Both statutes refer to "personal property," so which applies? There is no case law directly on point. Generally, a longer statute of limitations should be used when two periods are arguably applicable. *Rawlings v. Interlock Indus., Inc.*, --- S.W.3d ---, No.2008-CA-001616-MR, 2010 WL 1006853, at *13 n.10 (Ky. Ct. App. Mar. 19, 2010) (citing *Troxell*, 730 S.W.2d at 528). This rule clearly weighs in favor of the five-year statute.

There is, however, a rule of construction that weighs in favor of the two-year statute: when two statutes are irreconcilable, the later-enacted statute controls based on the theory of implicit repeal. *Beshear v. Haydon Bridge Co., Inc.*, 304 S.W.3d 682, 703 (Ky.2010) (citing *Butcher v. Adams*, 220 S.W.2d 398, 400 (Ky. 1949)). Here, the two-year provision is the later-enacted statute and, under this canon, the controlling limitations period.

Kentucky courts have further adopted the rule of statutory interpretation that the more specific statute controls over the more general one. *Troxell v. Trammell*, 730 S.W.2d 525, 528 (Ky. 1987). Here, however, each statute is more specific in one relevant sense and more general in another relevant sense. The two-year statute is more specific with respect to the class of injured property because it applies only to personal property, while the five-year statute is more specific with respect to the legal theory of harm because it applies only to trespass. The specific-general canon itself does not tell us how to resolve these competing types of specificity.

So the Court is faced with a tie among these tools of interpretation, with the presumption for the longer limitations period weighing in favor of the five-year provision, the presumption for later-enacted statutes weighing in favor of the two-year provision, and the specific-general canon weighing in favor of neither. When traditional tools of interpretation do not resolve statutory ambiguity, the United States Supreme Court has emphasized that the "classic judicial task" involves "reconciling [the] many laws enacted over time and getting them to 'make sense' in combination." *FDA v. Brown & Williamson Tobacco*, 529 U.S. 120, 143 (2000) (quoting *United States v. Fausto*, 484 U.S. 439, 453 (1988)). This task "necessarily assumes that the implications of a statute may be altered by the implications of a later statute." *Fausto*, 484 U.S. at 453.

In this case, the balance tips in favor of the two-year period because it makes the most sense of the two statutes in combination. In examining the conflict between the two-year and five-year periods, commentary on Kentucky law makes clear that if courts were to hold that the five-year statute of limitation applies, it would create bizarre results. *See* 13 Kentucky Practice: Tort Law § 7:1 (2010). Consider an example similar to that given in the commentary. Devin has a wagon he treasures. While on vacation, Michael takes Devin's wagon and destroys it. That is clearly a conversion—subject to the two-year statute of limitations. But suppose that Devin waits three years to file suit. Devin, realizing that he has missed the period, now argues that it was really a trespass. This would produce the absurd result where Michael argues that his actions are so bad that they amounted to a conversion and he is entitled to a dismissal. *See id.* at n.6. Clearly, it "would be illogical to apply a two-

year statute of limitation to conversion, but a five-year statute to trespass to chattels, a tort of lesser culpability." *Id.* § 7:1  Therefore, applying the two-year period to the mobile home owners' trespass claims best resolves the conflict between the earlier-enacted five-year period for trespass actions and the later-enacted two-year period for injuries to personal property. *See Son v. Coal Equity, Inc*., 122 F. App'x 797, 801 (6th Cir. 2004) (explaining that statutory construction tenets of applying a longer limitation period and later-enacted statute outweighed policy considerations associated with shorter period).

This result may appear unfair.  After all, why should a trespass involving a brick home be subject to a five-year statute of limitations when the next-door neighbor living in a mobile home has only two years to bring a claim?  This issue is one for the Kentucky legislature, not this Court.  And mobile home owners are not without recourse for trespass; they simply have a shorter time-frame in which to bring their claims.  Consequently, Frasure Creek and Grizzly are entitled to summary judgment on these claims.

**2. *Nuisance and Personal Property.***  Kentucky recognizes two types of nuisance claims:  public and private. *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 865 (W.D. Ky. 2009) (citing *W.G. Duncan Coal Co. v. Jones*, 254 S.W.2d 720, 723 (Ky. 1953)).  Here, the Plaintiffs assert private nuisance claims.  The Kentucky statute on private nuisance only applies to claims for "real property," not personal property. Ky. Rev. Stat. Ann. § 411.510(7).  Because a number of the Plaintiffs own mobile homes that remain personal property under Kentucky law and because they concede

their claims only involve personal property, the Defendants are entitled to summary judgment on these nuisance claims.

Under § 411.550, a private nuisance exists when a defendant's use of his property "substantially annoy[s] or interfere[s] with the [the claimant's] use and enjoyment of [his] property." This statute defines property as "real property," which would seem to preclude the mobile home owners, i.e. personal property owners, from recovering for nuisance. But there is a catch: § 411.560 describes who has standing to bring a nuisance claim. It reads: "No person shall have standing to bring an action for private nuisance unless the person has an ownership interest or *possessory interest* in the property alleged to be affected by the nuisance." *Id.* § 411.560 (emphasis added). And a possessory interest means "lawfully possessing property but does not include mere occupancy." *Id.* § 411.510. Here, the Plaintiffs do more than occupy the land on which their mobile homes sit—they have a possessory interest in it. *Ky. W. Va. Gas Co. v. Lafferty*, 174 F.2d 848, 853–54 (6th Cir. 1949) (citing *Brink v. Moeschl Edwards Corrugating Co.*, 133 S.W. 1147, 1148 (1911)) ("In Kentucky, it is held that a lawful possession, though unaccompanied by any title, is sufficient to support an action for damages for interference with lawful enjoyment of the premises by the person in possession.").

The problem for the Plaintiffs arises in their response to Grizzly's request for admissions. The Plaintiff mobile home owners admit that their "only claims in this lawsuit are for damage to, or diminution in value of, a mobile home and/or personal property." R. 90-4 at 1–2. They acknowledge that these claims do not involve the real property on which their mobile homes sit. If their claims do not involve real

property, how can they maintain a nuisance to real property suit? Without this admission, it would only be reasonable to assume their claims involve the real property underneath their mobile homes—property in which they maintain a possessory interest. Yet their admissions reveal otherwise. As a result, Frasure Creek and Grizzly are entitled to summary judgment on these claims.

**3. *Laches*.** Frasure Creek and Grizzly next claim that they are entitled to summary judgment under the doctrine of laches. Laches bars claims where a party engages in an unreasonable delay in asserting a right. *Plaza Condo. Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996) (citations omitted). The doctrine is meant to keep a party from sleeping on its rights so that it may act before "evidence is lost, memories have faded, and witnesses have disappeared." *Combs v. Intern'l Ins. Co.*, 354 F.3d 568, 590 (6th Cir. 2004) (citation omitted). Here, Frasure Creek and Grizzly claim that the Plaintiffs waited as long as four years to bring this suit without contacting either the company or state or federal regulatory agencies to complain. In fact, some Plaintiffs knew of the *Crisp* litigation and still neglected to file suit until after the close of that litigation. Despite Frasure Creek and Grizzly's best arguments, this case simply does not call for application of this equitable doctrine.

For the doctrine of laches to bar a claim, the delay must be "unreasonable" and result "in injury or work[] a disadvantage to the adverse party." *Plaza Condominium Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d at 54. Here, that delay was not unreasonable. The first group of plaintiffs initiated the *Crisp* litigation in 2007. R. 63-1 at 1. The parties filed an agreed order of dismissal on August 19, 2010. R. 63-6.

The present suit was filed in Floyd Circuit Court on May 21, 2010—before the agreed order was filed in the *Crisp* litigation. R. 1-2.

Further, at least some of the Plaintiffs attempted to join the *Crisp* litigation. However, the attorneys handling that matter informed them that new plaintiffs could not be added for fear of prejudicing those plaintiffs already in the suit by delaying a trial date. R. 139-5 at 2. Such was the case with the Plaintiff Mark Neeley. He testified that he attempted to join the first lawsuit but was told there were already too many plaintiffs in that lawsuit. R. 103-2 at 13–14. When asked why he did not contact another attorney, he replied, "This was supposed to be the case that was being filed." *Id.* Further, as he understood it, another case could potentially be filed and he should wait to join that suit. *Id.* In the case of Herbert Laferty, he testified that he did not join the *Crisp* litigation because he believed it to be a "waste" of time. R. 90-2 at 11–13; R. 90-3 at 4–5. But when placed in context, it appears this delay resulted from Laferty's not understanding the full nature of his rights. When asked if he was aware he had a claim, he replied, "I was aware a lot of people did, but I figured they were wasting their time." As for the Plaintiff Susan Barnette, she testified that she did not join the *Crisp* lawsuit for fear of costing miners their jobs. R. 114-2 at 47. She changed her mind only when the dust problem persisted. *Id.*

Grizzly claims it has been prejudiced by the Plaintiffs' delay in two ways. First, it argues that, as part of the *Crisp* litigation, it filed a declaratory judgment action against Wausau Underwriters Insurance Company in this Court for a declaration of rights under insurance policies it maintained with Wausau. R. 90-1 at 11. As part of the settlement and dismissal of the *Crisp* claims against Grizzly,

Grizzly dismissed its claims against Wausau with prejudice. It argues it would be prejudiced should the current claims go forward in light of its previous decision to settle with the *Crisp* plaintiffs and its insurer Wausau.

The pleadings leave unanswered whether Grizzly's dismissal of its case against its insurer precludes recovery against its insurer in this action. Grizzly indicates that it settled with the *Crisp* Plaintiffs and its insurer "in hopes of achieving finality" following from its one-year operation of the Banner Plant. *Id.* at 12. But this hope says nothing about whether the settlement somehow precluded coverage for future claims from different plaintiffs. Moreover, as the Plaintiffs point out, nothing mandated that the current Plaintiffs join the *Crisp* litigation under the joinder rules. R. 139-1 at 8. Nor does Grizzly point to any evidence suggesting that it settled with the *Crisp* plaintiffs and its insurer under the belief that no other suits could be brought by plaintiffs not involved in that litigation. That unknown potential plaintiffs existed at the time of the initial settlement was surely within the realm of possibility.

Second, Grizzly argues that the Plaintiffs allowed dust to accumulate for four years before taking action—time when the Plaintiffs could have mitigated or even prevented the damages or diminution in value to their property. But this argument does not carry the day. According to Lloyd Lane, who worked for Frasure Creek, residents living near the Plant went so far as to visit the Plant themselves to complain of the dust only to be told to leave. R. 112-3 at 23. He also testified that some residents called to complain. *Id.* at 22. One is also left to wonder: If the Defendants received notice from local residents that dust from the Plant was harming local

properties, why did the Defendants not take action to mitigate the damage they were allegedly causing?

This case differs from other cases where the laches doctrine was held to be applicable, such as *Preece Coal Co. v. Island Creek Coal Co*., 111 F.3d 132 (6th Cir. 1997) (unpublished table decision), where the plaintiff waited twelve years to bring a contract action and evidence had been lost and witnesses' memories had faded. Indeed, "Kentucky cases have long held that laches requires something more than a delay in that it requires a change in position by the defendant to such a point that [it] could not be restored to [its] former state and that it would be inequitable to enforce the action of the plaintiff." *Fayette Cnty. Bd. Of Educ. v. Maner*, No. 2007-CA-002243, 2009 WL 1423966, at *14 (Ky. Ct. App. May 22, 2009) (quoting *Fightmaster v. Leffler*, 556 S.W.2d 180, 183 (Ky. Ct. App. 1977)). Such a change in position is not in evidence here. Further, even though the Plaintiffs were not part of the *Crisp* litigation, their delay in bringing suit was not unreasonable and the Defendants have not sufficiently shown prejudice. Nor are there allegations that "evidence [has been] lost, memories have faded, [or that] witnesses have disappeared." *Combs*, 354 F.3d at 590. Frasure Creek and Grizzly's motions for summary judgment based on the doctrine of laches are denied.

**4. *Trespass, Nuisance, and Rental Properties*.** Grizzly and Frasure Creek also seek summary judgment on the trespass and nuisance claims of those Plaintiffs alleging damage to rental properties and undeveloped tracts of land. R. 126-1 at 1, 127-1 at 1, 129-1 at 1, 130-1 at 1, 133-1 at 1. They argue that the Plaintiffs' claims are temporary and not permanent in nature; thus, the proper measure of damages

should be the loss of rental income or rental value. *See, e.g.*, R. 126-1 at 7. But these Plaintiffs have presented only diminution in value damages. This oversight, according to Grizzly, dooms their claims. The problem with this analysis lies in the Defendants' characterization of the problem as "temporary." In the end, this is a disputed issue of fact.

A structure, even though permanent, that can be changed, repaired, or remedied at reasonable expense to abate the nuisance is temporary. *Lynn Mining. Co. v. Kelly*, 394 S.W.2d 755, 758 (Ky. 1965) (citing *City of Ashland v. Kittle*, 305 S.W.2d 768, 769 (Ky. 1957)). Grizzly uses another definition for "temporary." It cites to *Lynn Mining Co. v. Kelly* for the proposition that a coal tipple (like the Banner Plant), while a permanent structure, constitutes a temporary nuisance when it is "negligently constructed or negligently operated." R. 127-1 at 7 (citing *Lynn Mining Co.,* 394 S.W.2d at 758). In doing so, Grizzly overlooks the next two sentences of that case: "The injection of the concept of *negligence* into various aspects of the law of nuisance has caused endless and unnecessary difficulties. The time has come to remove it." *Lynn Mining. Co.,* 394 S.W.2d at 758. Under *Lynn Mining*, the negligent construction or operation of a structure is irrelevant. *Id.* Instead, the temporary/permanent distinction turns on whether the method of operation can be altered at a reasonable expense to eliminate the offending condition. *Id.* While the use of "negligence" in such cases has not disappeared, *see Wimmer v. City of Ft. Thomas*, 733 S.W.2d 759, 760–61 (Ky. Ct. App. 1987) (allowing a one-time recovery to be brought within five-year limitation period if permanent structure is unlawfully built or negligent if shown that the structure cannot be remedied at a reasonable

expense), the question to be answered is whether the structure, i.e., the Plant, can be changed, repaired or remedied at reasonable expense to abate the offending condition. *See* Ky. Rev. Stat. Ann § 411.530(1)(a) ("A permanent nuisance shall be any private nuisance that: (a) Cannot be corrected or abated at reasonable expense to the owner; and (b) Is relatively enduring and not likely to be abated voluntarily or by court order.").

Neither Frasure Creek nor Grizzly address whether the Banner Plant can be altered to abate the nuisance at a reasonable expense. At least for Grizzly, that makes sense because it no longer operates the Plant. Grizzly claims that because it ceased operations, any nuisance it caused has ended, making such nuisance "temporary" in nature. R. 149 at 11. However, at least one Kentucky court concluded that a permanent trespass occurs when the defendant's tortious act has been fully accomplished. *Golden Oak Mining Co. v. Lewis*, --- S.W.3d ---, No. 2008-CA-002148, 2011 WL 2416600, at *12 (Ky. Ct. App. June 17, 2011) (citing 75 Am.Jur.2d Trespass § 19 (2010)). Under that reading, Grizzly's actions are permanent. In *Golden Oak Mining Co. v. Lucas*, the defendant mining company ceased mining in 1997, five years before the plaintiffs brought their claims against it. 2011 WL 2416600, at *12. The court concluded its nuisance and trespass were permanent. "[W]hatever Golden Oak did that precipitated it, or whatever structure Golden Oak was responsible for creating, was complete in itself when mining ceased." *Id.*

The permanent/temporary distinction matters for assessing what measure of damages a party must provide to sustain its burden of proof. The rule in Kentucky is clear: "Where the property is occupied by the owner the measure of damages in a

temporary nuisance case is the diminution in the value of the use of the property during the continuance of the nuisance . . . ." *Adams Constr. Co. v. Bentley*, 335 S.W.2d 912, 913 (Ky. 1960); Ky. Rev. Stat. Ann. § 411.560(1)(b)(1). On the other hand, if the property is *not* occupied by the owner, the appropriate damages are the reduction in rental value over the applicable period. *Id*. § 411.560(1)(b)(2); *Ky. Mountain Coal Co. v. Hacker*, 412 S.W.2d 581, 582–83 (Ky. 1967). But "[w]here a nuisance is permanent, the measure of damages is the depreciation in the market value of the property . . . ." *Brumley v. Mary Gail Coal Co*., 246 S.W.2d 148, 151 (Ky. 1952). Again, the Plaintiffs have offered only proof of diminution in value damages. This means that if the nuisance and trespass were temporary, they have not met their burden of proof. However, if the claims were permanent in nature, they have satisfied their burden. Whether the nuisance was permanent or temporary is a question of fact for the jury. *Signal Mountain Portland Cement Co. v. Brown*, 141 F.2d 471, 475 (6th Cir. 1944). As a result, Frasure Creek and Grizzly's motions for summary judgment are denied.

*5. **Claims by Sonja Ratliff.*** The claims of one plaintiff in particular, Sonja Ratliff, stand apart from the remainder of the claims against Frasure Creek and Grizzly. Ratliff previously sued both Defendants for nuisance and trespass related to coal dust particles from the Banner Plant. *Crisp, et al. v. Grizzly Processing, LLC, & Frasure Creek Mining, LLC*, Floyd Circuit Court, Division I, Civil Action No. 07-CI-1384. In fact, she settled her claims against the Defendants, R. 96-4, and the Floyd Circuit Court entered an order dismissing the action on August 19, 2010, R. 63-6. Prior to that date on May 21, 2010, another group of claimants filed a subsequent suit

in Floyd Circuit Court against the same defendants. R. 1-2. Ratliff, who had been a party in the first suit, joined the second suit seeking to recover for damage to another piece of property. R. 17. Frasure Creek and Grizzly now move for summary judgment against Ratliff arguing that her claims are barred by the settlement agreement she entered into in the previous suit. R. 63-1; R. 96-1. They are correct.

The release Ratliff signed in the *Crisp* suit did not mince words. It extended to "all unknown, unforeseen, and unexpected damages, losses, and liability as well as to those now known to exist" and included "any claims, actions, or causes of action which the undersigned Claimant(s), have or could have brought against the Defendant(s) . . . arising out of the previously described conduct." R. 63-4 at 3–4. It also stated that the parties agreed that the settlement was "based upon permanent nuisance and that any claims arising out of on-going and future operations of Frasure Creek or its affiliates of the same nature as at suit herein are being settled and released hereby." *Id.* But wait, says Ratliff: Her current claim involves property located at 175 Central Avenue, Allen, Kentucky, and her previous claim involved rental property located at 192 Central Avenue, Allen, Kentucky—two totally different properties. R. 79-1. Further, she says no one informed her that it was possible to make a claim for damages to rental property at that time. *Id.* She also admits that she owned the rental property at the time of the *Crisp* litigation. R. 63-3 at 13. And finally, Ratliff acknowledges that the alleged damage to all of her properties began before the start of the *Crisp* litigation. *Id.* at 16–17.

The Kentucky Supreme Court has stated that "[w]hen no ambiguity exists in the contract, we look only as far as the four corners of the document to determine that

intent." *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006) (quoting *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005)). Here, the language of the release unambiguously states that it applies to "any claims, actions, or causes of action which the undersigned Claimant(s), have or could have brought against the Defendant(s)." R. 63-4. Such language encompasses any claims Ratliff may have had involving other property. That the provision did not explicitly list the address of Ratliff's property does not alter this conclusion.

Ratliff's relies on *Hargis v. Baize*, 168 S.W.3d 36 (Ky. 2005), to invalidate the release she signed in Crisp on the grounds the agreement was not sufficiently clear and did not use the word "negligence." In *Hargis*, the defendant sought to enforce an exculpatory contract signed by the deceased prior to his death that would have exempted the defendant from liability. But that case involved a "preinjury" release. Ratliff, however, seeks to recover for an injury that occurred to property she owned *at the time* she signed the release in the *Crisp* litigation and for which she could have brought a claim. That she did not know she could assert a claim for her rental property in addition to other property falls not on Frasure Creek or Grizzly but on herself and her counsel at the time.

Ratliff next argues that, because Grizzly failed to tender its settlement share in a timely fashion and the state court entered a civil judgment against Grizzly, the release should be invalidated. R. 139-1 at 16. Ratliff cites no case law supporting this theory and fails to develop this argument. Any recourse she may have for problems arising from that settlement lie not in this suit. Another option would have

been to return the sum she received in the settlement before commencing this suit. *Rigsby v. Ashland Inc.*, No. Nos. 2008-CA-001265-MR, 2009 WL 2569133, at *3 (Ky. Ct. App. Aug. 21, 2009) ("Because appellants failed to tender or return the consideration given for the 1997 settlement agreement prior to commencing the present action, the trial court properly dismissed their complaints."); *McGregor v. Mills*, 280 S.W.2d 161, 162-63 (Ky. 1955). She did not do so.

Finally, Ratliff contends the settlement agreement should not be enforced because the problem is continuing. R. 79 at 4. Yet nothing indicates that the release was conditioned on Frasure Creek and Grizzly changing the way they operated.

As a result, Frasure Creek and Grizzly are entitled to summary judgment on Ratliff's claims.

***6. Jonathan and Julie Morris.*** Grizzly also moves for summary judgment on the claims of Plaintiffs Jonathan and Julie Morris. R. 102-1 at 4. Grizzly says the couple admitted that their problems started after they ceased operating the Plant and that they cannot sustain their burden of proof on summary judgment. Unraveling this claim requires resort to a calendar and a closer reading of Julie Morris's testimony. Ultimately, the Morrises have not sustained their burden of proof and Grizzly is entitled to summary judgment.

To begin, the Morrises admit that Grizzly operated the Plant from April 2007 to April 2008. R. 102-3 at 1–2. Also, all are in agreement that Grizzly deposed the couple on December 17, 2010. During that deposition, Grizzly asked Julie Morris when she first started experiencing dust problems on her property. R. 102-2 at 81. She stated that the problems had gone on longer than a year. *Id.* When asked if the

problems had gone on longer than two years, she again replied yes. And when asked if the problems dated back three years, she answered, "I don't know. I know it wasn't there when we moved there [in 2004]." *Id.*

Under Grizzly's reading of the timeline, the earliest that the Morrises' problems could have begun was two years prior to the deposition—December 17, 2008. R. 102-1 at 4. Grizzly ceased operations in April 2008, and thus, was no longer in control in December, 2008. Julie Morris, however, reads her comments to say that as long as Grizzly operated the Plant *between* two and three years before the deposition, she has sustained her burden of proof on summary judgment. After all, she knew the problems started more than two years prior to December 17, 2010. Such inconclusive statements will not save the day. *Gooden v. City of Memphis Police Dept.*, 67 F. App'x 893, 895 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment.").

First, it is the plaintiff's burden to prove the existence of a nuisance. *City of Louisville v. Munro*, 475 S.W.2d 479, 482 (Ky. 1971). At the very least, this burden requires that she show Grizzly operated the Plant during the timeframe when their problems began. Yet Julie Morris's comments prove speculative at best. She can only say their problems lasted longer than two years. Did they overlap with Grizzly's operation? She does not know.

Requiring her to answer this basic question is not asking the impossible. For example, if either side's attorney had asked Morris whether the problems started by

March 2008 and she could not remember, no one would be surprised. Recalling the exact month something occurred is often difficult. While she might not have remembered the month or even the exact year, she nevertheless may have recalled seeing coal dust on the ground near Christmas of that year or after the first snow-fall or near her birthday. Yet no such questions were asked during her deposition. Nor did she supplement the record with a sworn affidavit placing the start of the problem during Grizzly's operation. The Morrises instead ask the Court to construe an uncertainty in their favor—not evidence.

Summary judgment is appropriate when the moving party submits a properly made and supported motion and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is the case here. Neither guesses nor speculation can withstand a properly supported motion for summary judgment. As a result, Grizzly is entitled to summary judgment on the Morrises' claims.

*7. **Ruby Kinzer and the Estate of Jerome Kinzer**.* Grizzly makes a similar argument involving the claims of Ruby Kinzer. R. 93-1. On January 7, 2011, Ruby Kinzer stated that her dust problems began "a year and a half or two years ago." R. 93-2 at 38–39. Assuming the problems began two full years prior to the deposition, Kinzer's problems would have begun January 7, 2009. And as previously explained, Grizzly ceased operations in April 2008—over eight months before Kinzer's dust problems began.

Grizzly's claim against Kinzer succeeds. Construing the evidence in the light most favorable to Kinzer, her problems began two full years before her deposition.

Frasure Creek had assumed operations at the Plant by that time. Kinzer argues that the Court should not place such a precise characterization on her testimony. Yet the burden remains with her to prove her case. *City of Louisville v. Munro*, 475 S.W.2d 479, 482 (Ky. 1971) (holding that it is incumbent upon the plaintiff to prove the existence of a nuisance unless a nuisance per se exists). Even if she also admitted in her deposition that she could not recall first noticing the dust, her answer to Grizzly's question cannot be ignored. Thus, Grizzly's motion for summary judgment against Kinzer is granted.

*8.* ***Carl Sellards's Nuisance Claim.*** Grizzly also moves for summary judgment against the Plaintiff Carl Sellards's nuisance claim. R. 117. Grizzly asserts that Sellards lacks standing and is not the real party in interest to prosecute the claim. It turns out that in 2006, Sellards deeded the property to his estranged wife Phyllis. R. 117-1 at 7. Phyllis deeded it back to Sellards in 2009. These dates mean that Sellards did not own the property during the period in which Grizzly operated the Banner Plant—April 2007 to April 2008—and would appear to preclude Sellards's claim. Case closed? Not yet.

Sellards alleges his estranged wife Phyllis obtained the deed through fraud, rendering the conveyance invalid. *See Bender v. South*, 225 S.W. 504, 505 (Ky. 1920) (excluding extrinsic evidence in interpreting deed except in case of fraud). In his deposition, he says that Phyllis "stole the property from" him while he was hospitalized in May 2006. R. 117-2 at 3. He explained that "[s]he got me in the hospital and put the property in her name, hoping I would die, I guess." *Id.* When

asked whether "your testimony [is] that this is a fraudulent deed," Sellards confirmed that it was. *Id.*

Grizzly casts doubt on the credibility of Sellards's allegation of fraudulent conduct in connection with the May 2006 conveyance by noting that the original conveyance was notarized. Sellards also appears to have conveyed another piece of property to Phyllis near that same time. R. 117-5. Further, upon transfer of the deed from Phyllis back to Sellards in 2009 as part of their divorce proceedings in Floyd Family Court, no mention of fraud is ever made on the deed. R. 117-1 at 7–8. The deed is instead made pursuant to "property settlement negotiations."

On a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden of demonstrating the absence of a genuine dispute as to the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden has been met, the burden shifts to the nonmoving party to show otherwise. For Sellards, this burden-shifting is the problem. He relies solely on his deposition testimony in support of his fraud allegation without producing any additional evidence. For instance, Sellards might have produced an affidavit discussing what occurred in May 2006. Or he might have offered evidence from someone who witnessed the transaction. He does none of these, instead offering only his unsupported remarks. And conclusory allegations, speculation, and unsubstantiated assertions will not defeat a well-supported summary-judgment motion. *Gooden*, 67 F. App'x at 895.

Sellards's better argument is simply that the property remained marital property and that he retained an interest in it. He points out that under Kentucky law, property acquired during a marriage is generally presumed to be marital property, regardless of how the property is titled. R. 145-1 at 2; *see* Ky. Rev. Stat. Ann. § 403.190(3) ("All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property."). Thus, the name on the deed alone does not answer the question of whether Sellards retained an interest in the property when he conveyed it to his then-wife Phyllis. Grizzly argues that when Sellards conveyed the property to Phyllis he relinquished his rights in it, including his curtesy rights. But according to *Hughes v. Saffell*, 119 S.W. 804 (Ky. 1909), a husband may claim a curtesy in land in which he himself conveyed to his wife. Without more information, the Court cannot say whether Sellards's retained an "ownership or possessory interest" in the property as required by Ky. Rev. Stat. Ann. § 411.560(5) to bring a private nuisance action.

Because a genuine issue of material fact exists—namely, whether Sellards retained an interest in the property at the time Grizzly operated the Banner Plant— summary judgment in favor of Grizzly is inappropriate at this time.

### III. CONCLUSION

In the end, many of the Plaintiffs have presented sufficient evidence to see their claims proceed to trial. Their battle, however, is not yet won. For example, the Plaintiffs must prove that the Defendants *intended* to touch them in establishing their

assault and battery claims. Also, should the jury determine that the nuisance and trespass were temporary rather than permanent, the rental property owners' failure to present the appropriate measure of damages may mean they cannot recover. Those challenges remain for another day.

Accordingly, it is **ORDERED** that:

(1)     Frasure Creek and Grizzly's motion to exclude the testimony of the Plaintiffs' expert Jack Spadaro, R. 121 and R. 122, are **DENIED**. However, Spadaro's testimony shall be limited to only that information contained in the report attached to the Plaintiffs' response at R. 146-2. Also, the Defendants shall have thirty days from the date of this Order to depose Spadaro. The Plaintiffs shall his ensure his availability.

(2)     Frasure Creek's motion for leave to join and adopt the arguments presented by Grizzly in the relevant sections of Grizzly's motions for summary judgment, R. 134, is **GRANTED**.

(3)     Grizzly's motion for leave to join and adopt the arguments presented by Frasure Creek in its motion for summary judgment against all Plaintiffs, R. 124, is **GRANTED**.

(4)     Frasure Creek and Grizzly's motion for summary judgment against all Plaintiffs, R. 123, is **GRANTED IN PART** and **DENIED IN PART**.

        a.     The motion for summary judgment on causation is **DENIED**.

b.   The motion for summary judgment on the Plaintiffs' failure to state the applicable damages is **DENIED**.

c.   The motion for summary judgment against those Plaintiffs who admitted they were not seeking any claims in nuisance based on noise disturbances is **GRANTED**.   Those Plaintiffs include: Susan Barnette, Hollie Blanton, Warren Blanton, Michael Boyd, Michael Lee Boyd, Sabrina Boyd, Vickie Boyd, Cara Hall, Eric Hall, Fred Hall, Mary Anne Hall, Valerie Hall, Tommy Harmon, Diana Johnson, Thelma Jones, Ruby Kinzer, Herbert Lafferty, Janie Lemaster, Jonathan Morris, Sharon Neely, Angie Prater, Curtis Prater, Sonja Ratliff, Linda Rice, Lowell Sammons, Lowell Sammons, Jr., Mark Tackett, Marlene Tackett, Marvin Tackett, Sharon Tackett, John Webb, Cindy Wells, and Carolyn Worrix.

d.   The motion for summary judgment on the Plaintiffs' assault and battery claims is **DENIED**.

e.   The motion for summary judgment against those Plaintiffs alleging personal injuries is **GRANTED**.   Those Plaintiffs include:  Michael Lee Boyd, Sabrina Boyd, Edmona Calhoun, Tommy Harmon, Clara Ratliff, Pearl Watts, and Randall Watts.

f.   The motion for summary judgment on the Plaintiffs' failure to produce evidence of lost rental income is **DENIED**.

(5)     The motions for summary judgment against Sonja Ratliff based on her previous settlement with the Defendants, R. 63 and 96, are **GRANTED**. The Court need not reach the other arguments opposing Ratliff's claims. Her claims are **DISMISSED WITH PREJUDICE**.

(6)     The motion for summary judgment against the Plaintiffs Garnett and Herbert Laferty, R. 90, is **GRANTED IN PART** and **DENIED IN PART**.

    a.     Grizzly's motion for summary judgment on the Lafertys' trespass claims is **GRANTED**.

    b.     Grizzly and Frasure Creek's motion for summary judgment on the Lafertys' nuisance claims is **GRANTED**.

    c.     Grizzly's motion for summary judgment on the Lafertys' assault and battery claims is **DENIED**.

    d.     Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

    e.     Grizzly's motion to dismiss based on the Lafertys' failure to effect service is **DENIED**.

(7)     The motion for summary judgment against the Plaintiff Cindy Wells, R. 91, is **GRANTED IN PART** and **DENIED IN PART**.

    a.     Grizzly's motion for summary judgment on Wells's trespass claims is **GRANTED**.

    b.     Grizzly and Frasure Creek's motion for summary judgment on Wells's nuisance claims is **GRANTED**.

  c.  Grizzly's motion for summary judgment on Wells's assault and battery claims is **DENIED**.

  d.  Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

  e.  Grizzly's motion to dismiss based on Wells's failure to effect service is **DENIED**.

(8)  The motion for summary judgment against the Plaintiff Linda Rice, R. 92, is **GRANTED IN PART** and **DENIED IN PART**.

  a.  Grizzly's motion for summary judgment on Rice's trespass claims is **GRANTED**.

  b.  Grizzly and Frasure Creek's motion for summary judgment on Rice's nuisance claims is **GRANTED**.

  c.  Grizzly's motion for summary judgment on Rice's assault and battery claims is **DENIED**.

  d.  Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

  e.  Grizzly's motion to dismiss based on Rice's failure to effect service is **DENIED**.

(9)  Grizzly's motion for summary judgment against the Plaintiff Ruby Kinzer (and in her capacity as executrix of the estate of Jerome Kinzer), R. 93, is **GRANTED**. *See* Part D, Section 7, above. Grizzly and Frasure Creek's motion for summary judgment on Kinzer's nuisance claims is **GRANTED**.

(10)     The motion for summary judgment against the Plaintiff Diann Johnson, R. 94, is **GRANTED IN PART** and **DENIED IN PART**.

    a.    Grizzly's motion for summary judgment on Johnson's trespass claims is **GRANTED**.

    b.    Grizzly and Frasure Creek's motion for summary judgment on Johnson's nuisance claims is **GRANTED**.

    c.    Grizzly's motion for summary judgment on Johnson's assault and battery claims is **DENIED**.

    d.    Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

    e.    Grizzly's motion to dismiss based on Johnson's failure to effect service is **DENIED**.

(11)     Grizzly's motion for summary judgment against the Plaintiffs Jonathan and Julie Morris, R. 102, is **GRANTED**. *See* Part D, Section 6, above.

(12)     The motion for summary judgment against the Plaintiffs Mark and Sharon Neeley, R. 103, is **GRANTED IN PART** and **DENIED IN PART**.

    a.    Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

    b.    Grizzly's motion for summary judgment on the Neeley's noise nuisance claims is **GRANTED**.

c.  Grizzly's motion for summary judgment on the Neeley's assault and battery claims is **DENIED**.

d.  Grizzly's motion to dismiss based on the Neeley's failure to effect service is **DENIED**.

(13)  The motion for summary judgment against the Plaintiffs Mark and Sharon Tackett, R. 104, **GRANTED IN PART** and **DENIED IN PART**.

a.  Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b.  Grizzly's motion for summary judgment on the Tackett's noise nuisance claims is **GRANTED**.

c.  Grizzly's motion for summary judgment on the Tackett's assault and battery claims is **DENIED**.

d.  Grizzly's motion to dismiss based on the Tackett's failure to effect service is **DENIED**.

(14)  The motion for summary judgment against the Plaintiffs Eric and Cara Hall, R. 107, is **GRANTED IN PART** and **DENIED IN PART**.

a.  Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b.  Grizzly's motion for summary judgment on the Hall's noise nuisance claims is **GRANTED**.

c. Grizzly's motion for summary judgment on the Hall's assault and battery claims is **DENIED**.

d. Grizzly's motion to dismiss based on the Hall's failure to effect service is **DENIED**.

(15) The motion for summary judgment against the Plaintiff Janie Lemaster, R. 109, is **GRANTED IN PART** and **DENIED IN PART**.

a. Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly and Frasure Creek's motion for summary judgment based on Lemaster's nuisance and trespass claims for failure to state the appropriate damages is **DENIED**.

c. Grizzly's motion for summary judgment on Lemaster's noise nuisance claims is **GRANTED**.

d. Grizzly's motion for summary judgment on Lemaster's assault and battery claims is **DENIED**.

e. Grizzly's motion to dismiss based on Lemaster's failure to effect service is **DENIED**.

(16) The motion for summary judgment against the Plaintiff Carolyn Worrix, R. 110, is **GRANTED IN PART** and **DENIED IN PART**.

a. Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly's motion for summary judgment on Worrix's noise nuisance claims is **GRANTED**.

c.    Grizzly's motion for summary judgment on Worrix's assault and battery claims is **DENIED**.

d.    Grizzly's motion to dismiss based on Worrix's failure to effect service is **DENIED**.

(17)    The motion for summary judgment against the Plaintiffs Lowell and Evelyn Sammons, R. 112, **GRANTED IN PART** and **DENIED IN PART**.

a.    Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b.    Grizzly and Frasure Creek's motion for summary judgment based on the Sammonses' nuisance and trespass claims for failure to state the appropriate damages is **DENIED**.

c.    Grizzly's motion for summary judgment on the Sammonses' noise nuisance claims is **GRANTED**.

d.    Grizzly's motion for summary judgment on the Sammons' assault and battery claims is **DENIED**.

e.    Grizzly's motion to dismiss based on the Sammonses' failure to effect service is **DENIED**.

(18)    The motion for summary judgment against the Plaintiff Susan Barnette, R. 114, is **GRANTED IN PART** and **DENIED IN PART**.

a.    Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly's motion for summary judgment on Barnette's noise nuisance claims is **GRANTED**.

c. Grizzly's motion for summary judgment on Barnette's assault and battery claims is **DENIED**.

d. Grizzly's motion to dismiss based on Barnette's failure to effect service is **DENIED**.

(19) The motion for summary judgment against the Plaintiff Carl Sellards, R. 117, is **GRANTED IN PART** and **DENIED IN PART**.

a. Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly and Frasure Creek's motion for summary judgment on Sellards's nuisance claims is **GRANTED**.

c. Grizzly's motion for summary judgment on Sellards's assault and battery claims is **DENIED**.

d. Grizzly's motion to dismiss based on Sellards's failure to effect service is **DENIED**.

(20) The motion for summary judgment against the Plaintiffs Thelma and Joseph Jones, R. 118, is **GRANTED IN PART** and **DENIED IN PART**.

a. Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly's motion for summary judgment on the Joneses' noise nuisance claims is **GRANTED**.

c. Grizzly's motion for summary judgment on the Joneses' assault and battery claims is **DENIED**.

d. Grizzly's motion to dismiss based on the Joneses' failure to effect service is **DENIED**.

(21) The motion for summary judgment against the Plaintiff Damon Gayheart, R. 119, is **DENIED**.

a. Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly's motion for summary judgment on Gayheart's assault and battery claims is **DENIED**.

c. Grizzly's motion to dismiss based on Gayheart's failure to effect service is **DENIED**.

(22) The motion for summary judgment against the Plaintiffs Randall and Angela Watts, R. 125, **GRANTED IN PART** and **DENIED IN PART**.

a. Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly's motion for summary judgment on the Watts's assault and battery claims is **DENIED**.

c. Grizzly's motion for summary judgment on the Watts's personal injury claims is **GRANTED**.

d. Grizzly's motion to dismiss based on the Watts's failure to effect service is **DENIED**.

(23)     The motion for summary judgment against the Plaintiff Tommy Harmon, R. 126, is **GRANTED IN PART** and **DENIED IN PART**.

    a.    Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

    b.    Grizzly and Frasure Creek's motion for summary judgment based on Harmon's nuisance and trespass claims for failure to state the appropriate damages is **DENIED**.

    c.    Grizzly's motion for summary judgment on Harmon's noise nuisance claims is **GRANTED**.

    d.    Grizzly's motion for summary judgment on Harmon's assault and battery claims is **DENIED**.

    e.    Grizzly's motion for summary judgment on Harmon's personal injury claims is **GRANTED**.

    f.    Grizzly's motion to dismiss based on Harmon's failure to effect service is **DENIED**.

(24)     The motion for summary judgment against the Plaintiffs Lowell and Mary Sammons, R. 127, **GRANTED IN PART** and **DENIED IN PART**.

    a.    Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

    b.    Grizzly and Frasure Creek's motion for summary judgment based on the Sammonses' nuisance and trespass claims for failure to state the appropriate damages is **DENIED**.

c. Grizzly's motion for summary judgment on the Sammonses' noise nuisance claims is **GRANTED**.

d. Grizzly's motion for summary judgment on the Sammonses' assault and battery claims is **DENIED**.

e. Grizzly's motion for summary judgment on the Sammonses' personal injury claims is **GRANTED**.

f. Grizzly's motion to dismiss based on the Sammonses' failure to effect service is **DENIED**.

(25) The motion for summary judgment against the Plaintiffs Michael Lee and Sabrina Boyd, R. 128, is **GRANTED IN PART** and **DENIED IN PART**.

a. Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b. Grizzly's motion for summary judgment on the Boyd's noise nuisance claims is **GRANTED**.

c. Grizzly's motion for summary judgment on the Boyd's assault and battery claims is **DENIED**.

d. Grizzly's motion for summary judgment on the Boyd's personal injury claims is **GRANTED**.

e. Grizzly's motion to dismiss based on the Joneses' failure to effect service is **DENIED**.

(26)     The motion for summary judgment against the Plaintiffs Michael and Vickie Boyd, R. 129, is **GRANTED IN PART** and **DENIED IN PART**.

   a.     Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

   b.     Grizzly and Frasure Creek's motion for summary judgment based on the Boyd's nuisance and trespass claims for failure to state the appropriate damages is **DENIED**.

   c.     Grizzly's motion for summary judgment on the Boyd's noise nuisance claims is **GRANTED**.

   d.     Grizzly's motion for summary judgment on the Boyd's assault and battery claims is **DENIED**.

   e.     Grizzly's motion for summary judgment on the Boyd's personal injury claims to their pets is **GRANTED**.

   f.     Grizzly's motion to dismiss based on the Boyd's failure to effect service is **DENIED**.

(27)     The motion for summary judgment against the Plaintiffs Marvin and Barbara Tackett, R. 130, **GRANTED IN PART** and **DENIED IN PART**.

   a.     Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b.  Grizzly and Frasure Creek's motion for summary judgment based on the Tackett's nuisance and trespass claims for failure to state the appropriate damages is **DENIED**.

c.  Grizzly's motion for summary judgment on the Tackett's noise nuisance claims is **GRANTED**.

d.  Grizzly's motion for summary judgment on the Tackett's assault and battery claims is **DENIED**.

e.  Grizzly's motion to dismiss based on the Tackett's failure to effect service is **DENIED**.

(28)  The motion for summary judgment against the Plaintiffs Leo and Pearl Watts, R. 131, **GRANTED IN PART** and **DENIED IN PART**.

a.  Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

b.  Grizzly's motion for summary judgment on the Watts's assault and battery claims is **DENIED**.

c.  Grizzly's motion for summary judgment on the Watts's personal injury claims is **GRANTED**.

d.  Grizzly's motion to dismiss based on the Watts's failure to effect service is **DENIED**.

(29)  The motion for summary judgment against the Plaintiff Marlene Tackett, R. 132, is **GRANTED IN PART** and **DENIED IN PART**.

a.  Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

        b.     Grizzly's motion for summary judgment on Tackett's noise nuisance claims is **GRANTED**.

        c.     Grizzly's motion for summary judgment on Tackett's assault and battery claims is **DENIED**.

        d.     Grizzly's motion to dismiss based on Tackett's failure to effect service is **DENIED**.

(30)     The motion for summary judgment against the Plaintiffs Jamie and Sherri Kinzer, R. 133, is **DENIED**.

        a.     Grizzly and Frasure Creek's motion for summary judgment based on the doctrine of laches is **DENIED**.

        b.     Grizzly and Frasure Creek's motion for summary judgment based on the Kinzer's nuisance and trespass claims for failure to state the appropriate damages is **DENIED**.

        c.     Grizzly's motion for summary judgment on the Kinzer's assault and battery claims is **DENIED**.

        d.     Grizzly's motion to dismiss based on the Kinzer's failure to effect service is **DENIED**.

This the 22nd day of August, 2011.



**Signed By:**

**_Amul R. Thapar_**

**United States District Judge**