UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| SUSAN BARNETTE, et al., | ) | |
| Plaintiffs, | ) ) ) | Civil No. 10-77-ART |
| v. | ) ) ) | |
| GRIZZLY PROCESSING, LLC, et al., | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In a familiar parable, one individual built his house on sand and another built his house on a rock. When wind and rain came to test the houses, the one built on the rock stood firm, while the one on sand crumbled. *Matthew* 7:24–27. Similarly, a motion built on speculation and conjecture will rarely withstand the winds of scrutiny. Because of an isolated incident of misconduct by one Plaintiff during jury selection, Defendants Grizzly Processing and Frasure Creek have moved for a mistrial and requested sanctions against the offending Plaintiff. But the Defendants suffered no prejudice because none of the affected individuals was seated on the jury. Thus, Defendants' motion for a mistrial is denied. The Court will refer the motion for sanctions to Magistrate Judge Hanly A. Ingram.

**BACKGROUND**

The story of this case has been retold a number of times. *See Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636, 640 (E.D. Ky. 2011). Briefly, the Plaintiffs in this case all live near a coal preparation plant in Banner, Kentucky. The Plaintiffs claim that starting in 2006, coal dust and noise from the Banner Plant began to interfere with their

ability to use and enjoy their residences. R. 17 at 7. The Plaintiffs sued the two companies that have operated the Banner Plant since the problems allegedly began: Grizzly Processing, LLC and Frasure Creek Mining, LLC. *Id.* After several rounds of summary judgment, *see* R. 153; R. 165, the remaining Plaintiffs were left standing with assault and battery claims for nominal damages, trespass claims, and nuisance claims, Bellwether Information Chart, R. 168-1. Because of the number of Plaintiffs, the Court divided the case into five trials with the first one to start on Monday, March 26, 2012. The Court referred jury selection for the first trial to Magistrate Judge Ingram and scheduled it for March 23, 2012. The parties consented to that referral, both before and during the jury selection.

Magistrate Judge Ingram conducted jury selection in the United States Courthouse in Pikeville, Kentucky. During jury selection, the plaintiffs, including Mark Tackett, were seated next to and behind their lawyers. The prospective jurors sat behind the parties in the gallery section of the courtroom. A wooden railing—similar to one found in most courtrooms—separated the parties from the prospective jurors.

Mr. Tackett sat at the end of a row of plaintiffs. Unbeknownst to his counsel, Ned Pillersdorf, Mr. Tackett brought several photographs into the courtroom. These photographs appear to depict coal dust at Mr. Tackett's properties, on his furniture, on his hands, and on some white cloth. *See* R. 246 (photographs). These photographs were not disclosed during discovery, and no party intended to introduce them at trial.

During jury selection, Tackett acted as an amateur courtroom sketch artist, drawing pictures of the ongoing proceedings. But at some point, Tackett put away his sketches and pulled out photographs of coal dust, raising them to his shoulder level and bringing them into the view of prospective juror 18. Concerned, she brought this incident to the attention of the

2

court security officer, who immediately informed Magistrate Judge Ingram. Judge Ingram questioned prospective juror 18, who indicated that prospective juror 12 also knew about Tackett's photographs. After questioning 18 and 12, Magistrate Judge Ingram polled the prospective jury pool to see if any others saw the photographs. In total, the six prospective jurors seated directly behind Tackett (Numbers 2, 3, 12, 18, 51, and 52) indicated that they had. Judge Ingram struck all of these prospective jurors for cause. As a result of Mark Tackett's misconduct, the Defendants moved for sanctions against Tackett as well as a mistrial.

## DISCUSSION

A district court has "broad discretion" to grant a mistrial when there is a "reasonable probability that the verdict of the jury" has been "influenced by improper conduct." *Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 819 (6th Cir. 2007) (quoting *Fuhr v. Sch. Dist. of Hazelwood Park*, 364 F.3d 753, 759 (6th Cir. 2004); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980)). As the parties moving for a mistrial, the Defendants bear the burden of demonstrating that Tackett's misconduct "resulted in actual juror partiality." *United States v. Herndon*, 156 F.3d 629, 636 (6th Cir. 1998) (quoting *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984)). Absent evidence of bias, "prejudice is not to be presumed." *Id.* In this case, the Defendants' motion for a mistrial is based on pure speculation and is therefore meritless.

Tackett's misconduct did not prejudice the Defendants. The parties agreed that Magistrate Judge Ingram would poll the prospective jurors to identify who saw Tackett's pictures. Once polled, all six of the prospective jurors seated directly behind Tackett

admitted that they had seen Tackett's photographs. Magistrate Judge Ingram struck all of them (2, 3, 12, 18, 51, and 52) for cause, so none of the impaneled jurors saw the photos.

Additionally, the Defendants' own actions demonstrate their rush to judgment. In a sidebar conference, the Defendants alluded to the need for a mistrial before they knew what pictures Tackett showed the prospective jurors or how many prospective jurors saw those pictures. For all the Defendants knew, Tackett had been holding up his sketches of the courtroom. At the point they initially indicated a mistrial may be warranted, the Defendants could not have known whether they suffered any prejudice.

For their part, the Defendants offer three arguments in favor of a mistrial. First, the Defendants conjecture that other prospective jurors probably saw the photos but did not admit to seeing them because of the late hour. R. 244 at 4. There is no evidence to support this naked assertion. When Tackett's misconduct came to light, the Court directed Mr. Pillersdorf to discreetly and quickly retrieve the photos, which he did. When Magistrate Judge Ingram sought details about the incident from prospective jurors 12 and 18, both stated that no other prospective jurors reacted to Tackett's display of the photos. Magistrate Judge Ingram questioned all of the prospective jurors about whether they saw the pictures, repeatedly emphasizing the importance of their honesty throughout the selection process. In fact, many potential jurors were forthright about their other possible biases. There is also no evidence that any of the jurors spoke about the photos during the breaks in jury selection.

The Defendants' allegations of dishonesty are not enough to establish prejudice. The Court must presume that jurors are honest during the jury selection process when they answer questions under oath. *See United States v. Rosario*, 111 F.3d 293, 300 (2d Cir. 1997) ("[A]bsent evidence to the contrary, we presume that jurors remain true to their oath"). The

Defendants offer nothing but speculation to rebut that presumption. Indeed, the prospective jurors in this case displayed commendable integrity. Prospective juror 18 voluntarily brought Tackett's misconduct to the Court's attention. All of the prospective jurors who were seated behind Tackett admitted that they saw the photos. And earlier in the jury selection process, other prospective jurors (all of whom were stricken for cause) candidly admitted that they could not be fair and impartial because of their backgrounds. The fact that the individuals in this jury pool were forthright about their own biases lends additional credibility to their responses about the photos. *Accord Smith v. Phillips*, 455 U.S. 209, 215 (1982) (noting that a court can ascertain the impartiality of a juror "by relying solely upon the testimony of the juror in question").

Furthermore, once Magistrate Judge Ingram struck the six individuals who saw the photos for cause, the Defendants agreed that the record was adequately developed. They declined the opportunity to question anyone other than prospective jurors 12 and 18 about their exposure to the photos. They cannot now use their decision not to investigate further as a basis to speculate that the remaining prospective jurors were prejudiced. As the Sixth Circuit has made clear, speculation about what other jurors may have heard or seen is insufficient to establish prejudice. *United States v. Granger*, 805 F.2d 1037, 1986 WL 16145, at *3 (6th Cir. Oct. 17, 1986) (unpublished table decision) (rejecting a defendant's speculation that a juror who improperly talked about the case with her non-juror husband would likely have discussed the case with other jurors before deliberation).

Second, the Defendants argue that even without seeing the photos, the impaneled jurors will still draw the negative inference that Frasure Creek prevented critical evidence from being presented at trial. R. 244 at 5–6. This argument assumes that the jurors will

5

ignore the Court's repeated instructions to disregard anything they have seen or heard outside of trial and to decide the case based only on the evidence admitted at trial. The American jury system, however, is based on the assumption that jurors will follow the Court's instructions when discharging their duties. The Court must not and will not "assume that a jury ignored explicit instructions." *Jacobs v. Sherman*, 301 F. App'x 463, 468 (6th Cir. 2008) (citing *United States v. Neuhausser*, 241 F.3d 460, 469 (6th Cir. 2001)). Rather, the Court presumes that "jurors follow their instructions." *Id.* (quoting *Neuhausser*, 241 F.3d at 469); *see also Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000). Without that presumption, there would be little reason to entrust fact-finding to a jury in the first place. Again, the Defendants offer no reason to conclude otherwise in this case.

Third, the Defendants argue that striking the six jurors for cause effectively gave the Plaintiffs six additional peremptory strikes and that they are prejudiced because they may have wanted to select these individuals for the jury. R. 244 at 5. As a threshold matter, the Defendants offer no evidence that the Plaintiffs wanted to exclude those six individuals from sitting on the jury. More importantly, the jury selection process is only "a means to achieve the constitutionally required end of an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000). Accordingly, a party has no "right to select" particular jurors, but only has a "right to reject" incompetent ones. *Pointer v. United States*, 151 U.S. 396, 412 (1894); *see also United States v. Graham*, 257 F.2d 724, 729 (6th Cir. 1958) ("A party to a lawsuit is entitled to have his cause tried to an impartial jury, but he has no vested right in any particular juror."); *United States v. Rodriguez*, 459 F.2d 983, 984 (9th Cir. 1972) ("A litigant has no vested right to keep a particular juror on the panel."); *Anderson v. Dun & Bradstreet, Inc.*, 543 F.2d 732, 735 (10th Cir. 1976) (holding that a party's right in jury

6

selection is "the right to exclude incompetent jurors, not to include particular persons who may be competent").  The Defendants simply are not entitled to have any of the six excused individuals on the jury.

Finally, Tackett's display of the photos was an isolated incident.  As the Sixth Circuit has made clear, a mistrial in a civil case is only appropriate when improper conduct "consistently permeated the entire trial from beginning to end."  *Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 F. App'x 654, 662 (6th Cir. 2007) (quoting *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997)).  As a result, a mistrial "on the basis of a single episode" is "rare."[1]  *Id.* (quoting *Beck v. Haik*, 377 F.3d 624, 643 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009)).  As soon as the Court discovered Tackett's misconduct, Magistrate Judge Ingram issued a curative instruction to all of the prospective jurors, telling them that nothing they see or hear during jury selection is evidence.  The Court repeated a similar statement in its preliminary instructions to the jury on the first day of trial and instructed the jury to disregard anything they see or hear outside of trial.  The jurors all agreed that they could.  The Court then repeated this instruction at the close of trial.  There is neither an "overwhelming probability" that the jury will be unable to follow the Court's instruction nor a "strong likelihood" that the photographs—which were not seen by any of the impaneled jurors—would be "devastating" to the Defendants.  *United States v. Fantroy*, 146 F. App'x 808, 815–16 (6th Cir. 2005) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)).

---

[1] The Court issues this opinion as the case is given to the jury.  Importantly, since jury selection there have been no further incidents.  The defendants have not pointed to any further problems, and the Plaintiffs have heeded the Court's stern warning that any improper contact with a juror would result in dismissal of their case.

7

Finally, throughout the trial the jurors have been able to ask questions. Not once did they refer to evidence outside the record or even indicate that "missing" evidence was bothering them. If anything, the contrary was true—the jury's detailed questions and constant attentiveness demonstrated their strict adherence to the Court's instructions.

## CONCLUSION

Although Tackett's conduct was improper, it did not prejudice the Defendants or permeate trial. As a result, it is **ORDERED** that the Defendants' motion for a mistrial and sanctions, R. 244, is **DENIED IN PART**. The Defendants' request for a mistrial is **DENIED**. The Defendants' request for sanctions against plaintiff Mark Tackett is **REFERRED** to Magistrate Judge Ingram for a recommendation and report.

This the 28th day of March, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge