UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

SUSAN BARNETTE, et al.,          )
                                 )
        Plaintiffs,              )          No. 7:10-CV-77-ART
                                 )
v.                               )
                                 )          RECOMMENDED DISPOSITION
GRIZZLY PROCESSING, LLC, et al., )
                                 )
        Defendants.              )
                                 )
                                 )

                 ***   ***   ***   ***

The Court considers Defendants' motion for sanctions against Plaintiff Mark Tackett based on conduct that occurred during jury selection on March 23, 2012. (D.E. 252; D.E. 286). Plaintiff, through counsel, responded in opposition to the motion, (D.E. 318), and the matter is now ripe for consideration. For reasons discussed below, the Court **RECOMMENDS** that District Judge Thapar **DENY**, in part, and **GRANT**, in part, Defendants' motion for sanctions.

## I. Background

Briefly, this case arises out of allegations that coal dust and noise from a coal processing plant in Banner, Kentucky has, since 2006, interfered with Plaintiffs' ability to use and to enjoy their respective residential properties. (D.E. 255, at 1-2). Defendants Grizzly Processing, LLC, and Frasure Creek Mining, LLC, have operated the Banner Plant during the period in question. *Id*.

On March 23, 2012, the undersigned presided over jury selection in this matter. (*See* D.E. 253). During the proceeding, the Court received notice from a court security officer that one of the jurors – Juror Number 18 – could see Plaintiff Mark Tackett flipping through pictures

having potential evidentiary value to the case.   Voir Dire Excerpt Transcript[1] (hereinafter "Transcript" or "Tr."), at 1.  Per the Court's instruction, Plaintiffs' counsel discreetly obtained the materials at issue from Mr. Tackett and provided them to the Court and counsel for review. *See id.* at 4-5.  Plaintiffs' counsel acknowledged the materials were not produced in discovery. The materials were subsequently filed under seal in the record.  (D.E. 246).

After a short recess and a brief conference outside the presence of the jury, the Court reconvened the proceeding.  The Court asked Juror Number 18 to approach the bench for "some limited follow-up questions."  Tr. at 13.  When asked by the undersigned about her concerns, Juror Number 18 stated that Mr. Tackett, throughout the proceeding, "had papers in his hand, and he was doodling and drawing. . . . [and] I saw him pick up something that looked like a photograph."  *Id.* at 14.  The photographs she saw and could identify depicted "stuff all over the hands" and "a pink glass."  *Id.* at 14-15; *id.* at 20 ("I could see black stuff on his fingers, and I'm thinking, well, maybe that's supposed to be the coal dust.").  She also stated that when Mr. Tackett was drawing, he held the papers on his propped up knee; "[w]hen he was looking at the photographs, he was holding them at his shoulder level."  *Id.* at 15.  Near the end of questioning, Juror Number 18 noted that she briefly discussed seeing the photographs with the prospective jurors seated on either side of her before alerting the court security officer of her concern that she saw "something possibly we shouldn't be seeing, and [she] wanted somebody to be aware of so it can be taken care of if that were true."  *Id.* at 18.

Based on Juror Number 18's statements, the Court also called Juror Number 12 up to the bench for questioning.  Juror Number 12 was seated next to Juror Number 18 during the events

---

[1] The parties have not requested a formal transcript of the voir dire from the court reporter.  Therefore, citations to the transcript herein refer to the rough transcript of the proceeding provided to the Court by the court reporter.  Obviously, any page numbering would be different if an official transcript is ordered. For ease in examining the Court's Recommended Disposition, the Court attaches as an Exhibit the rough transcript herein referenced and quoted.

at issue. Upon questioning from the Court, Juror Number 12 stated that she saw Mr. Tackett "holding . . . up" photographs, but she "couldn't really see anything . . . [because her] view was obstructed" by prospective jurors seated in front of her. *Id.* at 24, 27. She assumed that the prospective jurors seated in front of her "definitely saw" the photographs due to "their direct view of them." *Id.* at 30. Additionally, when asked to provide further description of what she witnessed, Juror Number 12 stated her belief that Mr. Tackett "was just looking at picture and didn't realize that he was holding them up or, you know, people could see them." *Id.* at 25. Furthermore, when specifically asked if she believed that Mr. Tackett purposefully held up the photographs, Juror Number 12 stated, "I didn't think it was on purpose, no." *Id.* at 30; *see id.* at 29 (Juror Number 12 answering "No." to the Court's question of whether Mr. Tackett made any motion that caused her to look over to see the photographs).

After this limited questioning of Juror Number 18 and Juror Number 12, the Court queried the entire panel about whether any of them had seen "some photographs or images that may appear to show information possibly relevant to the case . . . at some point during this proceeding." *Id.* at 36. In total, six jurors, to include Juror Numbers 18 and 12, stood to indicate that they had seen the photographs at issue. *Id.* at 37. All counsel declined the opportunity to question the four additional jurors. *Id.* at 42. Based on this information, Defendants' counsel moved for a mistrial, which the Court denied without prejudice. (*See* D.E. 245). The Court gave Defendants leave to file any motions for sanctions and proceeded to impanel an eight-member jury. *Id.* The Court struck for cause the four jurors that saw Mr. Tackett's photographs; Juror Number 18 and Juror Number 12 had already been struck for cause prior to questioning. *See* Tr. at 38.

3

On March 25, 2012, Defendants filed a motion for a mistrial and for sanctions against Plaintiff Tackett.  (D.E. 244; D.E. 252).  The District Judge denied the motion for mistrial and referred the motion for sanctions to the undersigned.  (D.E. 255).  Following a telephonic conference to discuss the briefing schedule for Defendants' motion, (D.E. 268), Defendants filed a timely supplemental motion, (D.E. 286), and Plaintiff Tackett responded in opposition.  (D.E. 318).  The matter is now ripe for consideration.

## II. Analysis

While Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 govern specific conduct and sanctions in civil cases, federal courts have an additional, inherent power to correct and to discipline conduct by counsel and parties by virtue of their institutional mandate "'to achieve the orderly and expeditious disposition of cases."  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)).  Thus, federal courts have the power to "assess attorney's fees under its inherent powers" upon a finding that a party acted in bad faith.  *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011); *see Chambers*, 501 U.S. at 45-46 ("[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (internal quotation omitted).  In short, "[t]he imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself[.]" *Chambers*, 501 U.S. at 46.  However, given the breadth and sheer potency of such inherent powers, a federal court must be careful to "exercise[] restraint and discretion" when evaluating whether a party's conduct merits sanction.  *Id.* at 44.

Here, Defendants first seek attorney's fees and costs incurred by virtue of the delay during jury selection caused by Mr. Tackett's alleged bad-faith conduct and incurred in pursuing

their motion for sanctions.  (D.E. 286, at 3-4).  Plaintiff opposes any such sanctions, arguing that Mr. Tackett's display of the photographs to prospective jurors was accidental and inadvertent. (D.E. 318, at 1).

Under the circumstances, Plaintiff Tackett's conduct does not indicate bad faith necessary to justify the sanctions sought by Defendants.  The undersigned did not personally observe Mr. Tackett hold up the photographs in question; thus, the decisional record consists of the forthright testimony elicited from Juror Number 18 and Juror Number 12.  The record is completely devoid of actual proof that Plaintiff Tackett deliberately held up the photographs at issue to influence or to prejudice the jury pool, or to otherwise delay or compromise the judicial proceedings in this case.  Moreover, comments from Juror Number 12 support Plaintiff's assertion that any display of photographs to prospective jurors was not purposeful.

When describing what she saw, Juror Number 18 stated that Mr. Tackett was "doodling and drawing" on papers propped on his knee throughout much of the jury selection process and then, "in the last little bit" of the proceeding, he held up and looked at a series of photographs. Tr. at 14-15.  As he looked at the "probably four or five pages" of photographs, he held them at shoulder level.  *Id.* at 15.  Per her testimony, Juror Number 18 recalled seeing one photograph showing hands covered in coal dust and another showing a pink glass; she could not "recognize what [the other images] were from where [she] was sitting."  *Id.* 14-15.  Similarly, Juror Number 12 stated that she saw one photograph – possibly showing "something that looked like a chain link fence," *id.* at 24, – of "a few" photographs that Mr. Tackett was looking at and moving "up and down a little bit."  *Id.* at 28.  Juror Number 12 did not think that Mr. Tackett raised the photographs above his shoulder, *id.* at 28, but she did indicate that her view was obstructed by persons sitting in front of her.  *Id.* at 24, 27.

5

In short, descriptions provided by Juror Number 18 and Juror Number 12 support an inference that Mr. Tackett was merely looking through photographs rather than attempting to play an illicit game of show-and-tell with the jury pool.  This inference is bolstered by Juror Number 12's assessment that Mr. Tackett was not intentionally showing the photographs to the jurors seated behind him.  To wit, when the undersigned asked her what Mr. Tackett had done, Juror Number 12 stated, "I think he was just looking at picture and didn't realize that he was holding them up or, you know, people could see them."  *Id.* at 24-25.  Furthermore, near the end of questioning, the following exchange occurred:

> MR. PILLERSDORF: "Ma'am, did it look like he was purposely trying to show you the photos, or he just placed them in the area where you could see them?"

> PROSPECTIVE JUROR 12: "I didn't think it was on purpose, no."

*Id.* at 30.  Defendants' counsel never followed up on those statements, *id.* at 30, and even after four more witnessing jurors identified themselves to the Court, no counsel sought to gain more information by questioning those persons.  *Id.* at 42.  In absence of affirmative proof of bad faith, the Court, ever cognizant of the need for restraint and discretion in the exercise of its inherent powers, finds that sanctions through an award of attorneys' fees and costs are not appropriate in this case.  Plaintiff Tackett's conduct was inappropriate, but Defendants' request for sanctions rests upon speculative bad faith that is not supported by the record.

However, Defendants also seek to exclude the materials (primarily the photographs) displayed by Mr. Tackett as evidence in any future trial in this case.  Plaintiff Tackett did not disclose these materials during discovery as required by Federal Rules of Civil Procedure.  Thus, under Rule 37(c)(1), Mr. Tackett is "not permitted to use" the photos at trial unless the failure to disclose is substantially justified or harmless.  Plaintiff Tackett has not demonstrated that his

failure to disclose is substantially justified or harmless.  The materials should therefore be excluded under Rule 37(c)(1).

### III. Conclusion

In sum, the Court **FINDS** that Mr. Tackett's inadvertent disclosure of photographs during the March 23, 2012, jury selection was not done in bad faith to improperly influence or sully the jury selection process.  The Court's inherent power to sanction a party via attorney fees and costs is not warranted under the facts at hand.  Therefore, the undersigned **RECOMMENDS** that the District Judge **DENY** that portion of Defendants' motion for sanctions.  However, the undersigned **RECOMMENDS** that the District Judge **GRANT** the portion of the motion seeking exclusion of the photographs/materials at any future trial in this case.

Out of an abundance of caution given the ongoing trials in this case, the Court **ORDERS** the Clerk to file **UNDER SEAL** the court reporter's rough voir dire transcript as an Exhibit to this Recommended Disposition because it consists of numerous bench conferences.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 27th day of April, 2012.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge